# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BASHIR HASSAN MOHAMED,<br><br>Petitioner,<br>vs.<br><br>KRISTI NOEM, et al.,<br><br>Respondents. | No. 26-CV-4001-CJW-KEM<br><br>**ORDER** |

_____

Petitioner Bashir Hassan Mohamed's Petition for Writ of Habeas Corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 9). Petitioner filed a reply. (Doc. 13). For the following reasons, the Court **grants in part and denies in part** the petition, and orders that respondents provide petitioner with a bond hearing.

## I. BACKGROUND

The parties agree on the basic facts. Petitioner is a citizen of Somalia. (Doc. 1-3, at 1; Doc. 12-1, at 2). On August 5, 2022, he entered the United States without inspection around San Ysidro, California. (*Id.*). At that time, he did not have "a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document[.]" (Doc. 1-3, at 1). An asylum officer, however, found that petitioner "has demonstrated a credible fear of persecution or torture" if he returned to Somalia. (Doc. 1-4, at 1). Petitioner was placed in expedited removal proceedings. (Doc. 1-3).

On September 3, 2022, petitioner was served a notice to appear ("NTA") at a hearing on September 12, 2022 in immigration court in Houston and charged with being inadmissible for failing to possess the required immigration documents and being present in the United States without being admitted or paroled. (*Id.*, at 1–2); *see* 8 U.S.C. §

1182(a)(7)(A)(i)(I) (detailing that an alien[1] is inadmissible if they are "not in the possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter."); 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible[.]").

On October 20, 2022, petitioner was granted humanitarian parole for one year and allowed to enter the United States. (Doc. 1-5); s*ee* 8 U.S.C. § 1182(d)(5)(A) (detailing parole). Later that year, on December 17, 2022, petitioner filed an application for asylum and withholding of removal which is still pending before the immigration court. (Doc. 12-1, at 3); *see* 8 U.S.C. § 1158 (asylum); 8 C.F.R. § 208.16 (withholding of removal). On October 20, 2023, his parole expired and was not renewed. (Doc. 12-1, at 2).

On September 5, 2025, the Board of Immigration Appeals ("BIA") issued its decision in *Matter of Yajure Hurtado*, finding that "under a plain language reading of . . . 8 U.S.C. § 1225(b)(2)(A), [i]mmigration [j]udges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission." 29 I&N Dec. 216, 225 (BIA 2025). The BIA so held because it determined that those "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228.

On December 2, 2025, Immigration and Customs Enforcement ("ICE") arrested petitioner in St. Paul, Minnesota. (Doc. 12-2, at 2). ICE transferred petitioner to the Woodbury County Jail in Sioux City, Iowa. (*Id.*).

---

[1] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

2

On January 12, 2026, petitioner filed the instant petition for habeas corpus relief along with Exhibits 1, 2, 3, and 4. (Docs. 1, 1-2 through 1-4). On January 29, 2026, respondents Pamela Bondi, David Easterwood, Todd Lyons, and Kristi Noem filed their response. (Doc. 9).[2] They also filed a declaration by Seth Patrin and Exhibits A and B.[3] (Docs. 12-1 through 12-3). On February 3, 2026, petitioner filed his reply. (Doc. 13). Petitioner remains detained at the Woodbury County Jail.[4] It does not appear that he ever requested a bond redetermination hearing before the immigration court.

## II.     LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

---

[2] As of filing, respondent Chad Sheehan has not filed an appearance or response. The Court finds his appearance or response not necessary here and thus proceeds in its analysis without them. *See* (Doc. 9, at 2 n.1) ("[A]ll arguments made on behalf of the [respondents] apply with equal force to Sherriff Sheehan, because [petitioner] is being detained at the request of the United States.").

[3] Exhibits 3 and B are both petitioner's NTA. (Docs. 1-4 & 12-3).

[4] https://locator.ice.gov/odls/#/results; https://injail.wcicc.com/.

3

## III.   DISCUSSION

The case here is slightly different than previous cases on eligibility for release on bond by aliens heard by this Court in that petitioner here did not enter without inspection. *See Lopez Lopez v. Sheehan*, No. 25-CV-4052-CJW-KEM, 2025 WL 3046183 (N.D. Iowa Oct. 30, 2025) (citizen of Guatemala who entered without inspection); *Arteaga Mejia v. Bondi*, No. 1:25-cv-00164-CJW-MAR (N.D. Iowa Oct. 31, 2025) (citizen of Mexico who entered without inspection); *Ramirez-Ramirez v. Beuter*, No. 25-CV-185-CJW-MAR, 2025 WL 3499057 (N.D. Iowa Dec. 5, 2025) (citizen of Guatemala who entered without inspection); *Jimenez Jimenez v. Olson*, No. 25-CV-189-CJW-KEM, 2025 WL 3633609 (N.D. Iowa Dec. 15, 2025) (citizen of Mexico who entered without inspection).[5] Rather, this case is similar to another case concerning a previous parolee and eligibility for release on bond recently heard by the Court. Judgment, *Bababekov v. Noem*, No. 1:25-cv-00224-CJW-MAR (N.D. Iowa Jan. 28, 2026), Dkt. No. 11.

Here, petitioner argues that he is unlawfully detained after being lawfully paroled into the United States twenty-five months ago. (Doc. 1, at 7). He claims that he is detained "not based on any individualized assessment of his circumstances, flight risk, or danger to the community, but pursuant to policies recently adopted by [the Department of Homeland Security ("DHS")] and the Executive Office for Immigration Review ("EOIR")[.]" (*Id.*, at 8). Petitioner claims that he is entitled "to consideration for release on bond or other conditions." (*Id.*, at 9). More specifically, he argues that the statute that respondents rely on for his detention "applies only to noncitizens who are actively

---

[5] This case is likewise by no means the first of this challenge nationwide, and the Court has lost track of the sheer number of cases as of this writing. *See Demirel v. Fed. Detention Ctr. Phila.*, Civ. No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025) (citing 282 district court decisions ruling against the government). One court determined the number to be 362 cases heard by 160 different judges sitting in 50 different jurisdictions as of late November 2025. *Barco Mercado v. Francis*, No. 25-CV-6582-LAK, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025). The number is certainly more than that at this point.

4

seeking admission to the United States." (*Id.*, at 14). Respondents answer that "[u]nlike many other habeas petitions this Court has recently addressed, [petitioner] is not only an 'applicant for admission,' but is an 'arriving alien,' subject to mandatory detention under [Title] 8[, United States Code, Section] 1225(b)." (Doc. 9, at 2). More concretely, respondents contend that "[w]hen discretionary parole is terminated or otherwise ends, an alien returns to the status he had at the time the parole was first issued. Here, [p]etitioner maintained his status as an arriving alien." (*Id.*).[6] Petitioner responds that "[a]t the time of his re-detention, [p]etitioner was not seeking admission. He had been paroled into the United States, released from custody, and lived in the interior for more than three years." (Doc. 13, at 1). Therefore, he requests release from detention, or, in the alternative a bond hearing before the immigration court. (*Id.*, at 5) ("At a minimum, the Court should order [r]espondents to promptly provide [p]etitioner with an individualized bond hearing.").

Thus, in this case, the Court must ask whether parole into the United States changes an alien's eligibility for release on bond under Title 8, United States Code, Section 1226(a). The Court begins, as it did in the previous cases, with the relevant

---

[6] Respondents claim that the Court does not have jurisdiction under Title 8, United States Code, Section 1252(a)(2)(B)(ii) to hear this petition. (Doc. 9, at 9). Because the Court concludes that petitioner is challenging his detention, not a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary" the Court finds that it does have jurisdiction and continues to its analysis. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 11 (2024) (discussing jurisdiction stripping under Section 1252(a)(2)(B)(ii)); *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 906 (8th Cir. 2005) (holding 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude review of "the predicate legal question whether the [agency] properly applied the law to the facts in determining an individual's eligibility to be considered for the relief") (citations omitted). *Hirey v. Noem* is inapposite here as in that case, the petitioner was challenging the decision to terminate his parole, not his detention. No. C25-4075-LTS-MAR, 2026 WL 91654, at *3 (N.D. Iowa Jan. 13, 2026) ("this court lacks jurisdiction to determine whether Hirey's parole was lawfully terminated and this case must be dismissed").

statutes. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (The Court "begins with the statutory text, and ends there as well if the text is unambiguous."); *accord Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806 (8th Cir. 2021) (stating that a court must "begin with the text").

### A. Title 8, United States Code, Sections 1225 and 1226

This case, to begin, tests the interplay between two immigration statutes. Section 1225 covers "applicants for admission"; defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). These applicants must undergo an inspection by an immigration officer to ensure their admissibility into the United States. 8 U.S.C. § 1225(a)(3); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). If they are found to be unlawful entrants, they are split into two categories.

If the alien is inadmissible due to fraud or willful misrepresentations, lacks necessary documentation or fits a designation by the Attorney General without having been continuously present in the United States for the past two years, then the alien may be summarily removed (excepting asylum or persecution claims). 8 U.S.C. § 1225(b)(1)(A) (citing *id.* § 1182(a)(6)(C), (a)(7)). An alien who does not fit those categories is still detained pending a removal proceeding if they are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted[.]" *Id.* § 1225(b)(2)(A) (citing *id.* § 1229(a)). Either way, Section 1225 does not anticipate the release of an applicant for admission pending a removal decision. *Cf. Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal. *Id.* at 288. As the Supreme Court explained:

6

> Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on . . . bond" or "conditional parole." *Ibid*.
>
> Section 1226(c), however, carves out a statutory category of aliens who may not be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Ibid*.
>
> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id*. at 288–89 (footnote omitted).

Federal regulations detail the bond procedure. First, Department of Homeland Security (DHS) officials make an initial custody determination. 8 C.F.R. § 236.1(c)(8). If DHS officials decide to keep the alien detained, the person may request a bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also id*. § 1003.19. At that time the alien may be released upon a showing by clear and convincing evidence that the alien is not a danger to the community or a flight risk and a posting of bond. 8 C.F.R. §§ 236.1(c)(3), 1236.1(c)(3). Thus, although aliens detained under Section 1225(b) who are seeking admission and not clearly and beyond a doubt entitled

7

to be admitted are not entitled to a bond hearing, detainees under Section 1226(a) are entitled to a bond hearing (subject to exceptions at Section 1226(c), inapplicable here).

But, given that this case really deals with the eligibility of an alien who was previously granted parole for release on bond, the Court must now analyze whether a previous parolee is still either arriving in the United States or seeking admission to the United States, thus placing them in the category of aliens under Section 1225(b) and depriving them of eligibility of release on bond or if such an alien remains under Section 1226(a) and eligible for bond release. The Court now turns to that issue.

### B. *Parole and Arriving in the United States or Seeking Admission*

"Immigration law has long allowed the Executive Branch to exercise its discretion to temporarily allow into the United States noncitizens who are applying for admission to the country instead of holding them in detention." *Coal. For Human Immgr. Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *7 (D.D.C. Aug. 1, 2025) (citing 8 U.S.C. § 1182(d)(5)(A)). Under Section 1182, "[t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A); *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1058 (5th Cir. 2022) ("an alien that is paroled into the country is explicitly not considered 'admitted'").

"[W]hen the purposes of such parole . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant[.]" 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5(e) ("Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized . . . and he or she shall be restored to the status that he or

she had at the time of parole."). As the Supreme Court has explained, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec'y v. Thuraissigiam*, 591 U.S. 103, 139 (2020). Federal regulations conclude the same: "[a]n arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act." 62 Fed. Reg. 10.312, 10,330 (Mar. 6, 1997). Thus, it is clear that an alien permitted into the United States on parole for a temporary period is not "admitted" for the purposes of immigration law.

But that is not the end of the inquiry. To fall within the category of applicants for admission for whom detention is mandatory, an alien must also be seeking admission: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" 8 U.S.C. § 1225(b)(2)(A). That a previous parolee is returned to his previous custody and status after their parole expires, does not necessarily mean that such a person is "seeking admission" to the United States. "[I]n immigration law, 'admission' is something that happens at a specific point in time; it is not a 'continuing status.'" *Coal. For Human Immgr. Rts.*, 2025 WL 2192986, at *23 (quoting *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). More specifically, admission is "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also Qasemi*, 2025 WL 3654098, at *6 (finding that although the petitioner was as applicant for admission, he was not seeking admission to the United States because "[h]e has already arrived, was paroled, entered, and has now been present in the United States for over a year. None of that is changed by the fact that he has not been formally admitted.").

This Court, and hundreds of other courts nationwide, have previously held that an alien already in the interior of the United States who entered without inspection is no

9

longer seeking admission, that is, attempting to enter the country lawfully through inspection and authorization by an immigration officer. They are not seeking admission because they are already in the country. *See, e.g.*, Ord. on Motion for Preliminary Injunction, *Dambreville v. Noem*, No. 4:25-cv-514, at *5 (S.D. Iowa Jan. 12, 2026), Dkt. No. 16. ("The phrase 'seeking admission' . . . does not apply to someone who entered nearly two years ago and has lived here since. That person is not 'seeking admission.' He is already here."); *see also Barco Mercado*, 2025 WL 3295903, at *4 (listing 350 cases finding an alien already in the United States eligible for release on bond because they are not seeking admission to the United States); *Chilel Chilel v. Sheehan*, No. C25-4053-LTS-KEM, 2025 WL 3158617, at *2 (N.D. Iowa, Nov. 12, 2025) (stating that courts "have understood the present tense 'seeking admission' to limit the section to applicants for admission attempting to enter, or having recently entered, the United States).

"Thus, Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *17 (S.D.N.Y. Nov. 28, 2025); *Qasemi*, 2025 WL 3654098, at *4 ("The doctrine of immigration parole is an exception to the otherwise mandatory nature of detention for noncitizens within the scope of Section 1225(b)(1). Under that doctrine, even a noncitizen applicant for admission who falls into the category of those that 'shall' be detained may be permitted to cross into the United States and live in the country with relative freedom pending further immigration proceedings.").

It would defy logic to conclude while an alien that entered unlawfully without inspection is not seeking admission but that a person who lawfully entered through parole, however, is seeking admission. That would place a person who avoided the lawful

procedures for admission to the United States eligible for release on bond while a person who followed the law ineligible. That conclusion does not follow, and the Court declines to so conclude. The Court finds, instead, that petitioner, while an applicant for admission, was not seeking admission, and thus falls under the category of aliens contemplated by Section 1226(a) and eligible for release on bond.[7]

In so concluding, the Court joins the near unanimity of other courts across the country that have reached the same conclusion: that an alien previously granted parole, while not admitted, is not seeking admission to the United States. *See Qasemi*, 2025 WL 3654098, at *11 (collecting cases) ("Every court that this Court is aware of that has considered the question has determined the same."). Such a conclusion avoids the "perverse incentive to enter at an unlawful rather than a lawful location." *Thuraissigiam*, 591 U.S. at 140. Put another way, "[a] contrary conclusion would lead to a senseless outcome; the noncitizen like Qasemi who is present and entered the country through a lawful process would still be 'arriving' in the country, whereas one who entered without any inspection or without any process whatsoever would not." *Qasemi*, 2025 WL 3654098, at *7.[8] Petitioner is not seeking lawful entry into the United States after

---

[7] Although the Court recognizes that the BIA reached the opposite conclusion in *Yajure Hurtado*, the Court is not bound by that decision and declines to follow it. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). The Court also notes that that case concerned an alien that entered without inspection. *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216, 217 (BIA) ("The respondent crossed the border into the United States without inspection[.]").

[8] Likewise, such a conclusion aligns with the rule that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas*, 533 U.S. at 693); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (same); *accord Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (stating that the rule is "well established . . . that the Fifth Amendment entitles aliens to due process of law"); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (holding that a noncitizen who

11

Case 5:26-cv-04001-CJW-KEM     Document 15     Filed 02/12/26     Page 11 of 13

inspection and authorization by an immigration officer, as that already happened on October 20, 2022. Instead, he is seeking to remain here. He is on the same footing as the aliens who entered without inspection, and he is entitled to a bond hearing, at which point an immigration judge can determine if he is a risk of danger or flight and can be released again on bond.

Although the Court concludes that petitioner is eligible for release on bond, the Court does not order petitioner's immediate release from custody, as the Court finds that doing so would undermine the immigration judge's role in determining if bond is necessary. *See Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *7 (S.D. Iowa Sept. 30, 2025) (finding that "the better exercise of discretion is for this Court to . . . [not] assume for itself the role of 'Immigration Judge' by deciding bond or detention in the first instance."); *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *8 (N.D. Ill. Oct. 16, 2025) (ordering a individualized custody redetermination hearing rather than immediate release as detention is discretionary under Section 1226(a)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (declining to order petitioner's immediate release as a remedy for being unlawfully barred from receiving a bond hearing and instead granting petitioner's request for a bond hearing).

Petitioner has not previously had a bond hearing, thus there has not been a determination of his risk of flight or dangerousness; the Court determines that such is the appropriate relief here. This relief aligns with the general rule that "the scope of injunctive relief is dictated by the extent of the violation established" and should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[ ]." *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022). Thus, petitioner's

---

entered the country in violation of the law cannot be deprived of his liberty without due process of law).

request for immediate release is denied. (Doc. 13, at 5). As the Court has already declared its ruling on the legality of petitioner's detention without a bond hearing, the Court also denies petitioner's request for declaratory relief. (Doc. 1, at 26). To declare the Court's ruling a second time would be duplicative and the Court finds it unnecessary.

## IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **granted in part and denied in part**. The Court **grants** petitioner's request for a bond hearing and hereby orders that within fourteen days of the date of this order respondents provide petitioner an individualized bond hearing before an immigration judge under Title 8, United States Code, Section 1226(a). The court **denies** petitioner's request for immediate release from custody as well as petitioner's request for declaratory relief.[9] This case can be closed.

**IT IS SO ORDERED** this 12th day of February, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

---

[9] The Court notes that petitioner requested attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in passing without briefing or documentation supporting the amount requested. (Doc. 1, at 26). Respondents did not respond to petitioner's request. To be eligible for attorney's fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). If petitioner wishes to pursue this claim further, petitioner must file a motion which is fully supported by a brief and documentation.